UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **CDM SMITH INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: |
| ) | |
| **ELANGOVAN THEVAR and NEER** ) | |
| **TECHNOLOGIES, INC.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT AND JURY DEMAND

1.   Until April 2020, Defendant Elangovan Thevar ("Thevar") was employed by Plaintiff CDM Smith Inc. ("Plaintiff" or "CDM Smith") as a Task Manager and Lead Modeler in CDM Smith's water resources consulting business. Thevar's contracts with CDM Smith required him to deliver to the company any ideas or innovations relating to CDM Smith's business or resulting from his access to company resources or information.  Yet in 2019, without informing CDM Smith, Thevar formed Defendant NEER Technologies, Inc. ("NEER") and developed a water management software platform that directly related to CDM Smith's business, competed with CDM Smith's water management products, and resulted from Thevar's access to company resources and information. Only after receiving significant capital investment and launching his competing product through NEER did Thevar resign from his position at CDM Smith. This action arises out of Thevar's failure to tender his competing product to CDM Smith in breach of his contracts with, and fiduciary duties to, CDM Smith, as well as NEER's tortious interference with Thevar's contracts with CDM Smith.

**Parties**

2.    Plaintiff CDM Smith Inc. is a Massachusetts corporation with a principal place of business at 75 State Street, Boston, Massachusetts.

3.    Defendant Elangovan Thevar is an individual who resides at 905 W 42 Street, Kansas City, Missouri and is the President, Chief Executive Officer, and founder of Defendant NEER Technologies, Inc.  Thevar legally changed his name from Elangovan Karuppasamy.

4.    Defendant NEER Technologies, Inc., is a Delaware corporation with a principal place of business at 3541 Jefferson Street, Kansas City, Missouri.

**Factual Background**

5.    CDM Smith is an engineering and construction firm that creates and implements software used to manage municipal water supplies and provides client service and smart solutions in the areas of the environment, transportation, energy, and facilities.

6.    Thevar was an employee at CDM Smith's Kansas City location from September 2005 to April 2020.  Thevar was a Water Resources Engineer performing the roles of Task Manager and Lead Modeler, whose work for CDM Smith included water resources consulting and modeling. At all relevant times, Thevar knew that CDM Smith was headquartered in Massachusetts and accepted payment of his wages therefrom.

7.    On September 12, 2005, at the beginning of his employment with CDM Smith, Thevar signed an "Employee Confidentiality and Invention Development Agreement" (the "2005 Confidentiality and Invention Agreement").  Thevar signed the 2005 Confidentiality and Invention Agreement as "Elangovan Karuppasamy." A true and accurate copy of the executed 2005 Confidentiality and Invention Agreement is attached hereto as Exhibit A.

8. Pursuant to the 2005 Confidentiality and Invention Agreement, Thevar acknowledged that he would be given access to "confidential information related to CDM business and interests and to that of CDM clients" and committed to not "disclose any confidential information in performing CDM project activities to anyone outside of CDM during or after my employment by CDM without written permission of CDM."

9. CDM Smith has not provided Thevar permission, much less written permission, to disclose confidential information to anyone outside of CDM Smith.

10. Thevar further agreed in the 2005 Confidentiality and Invention Agreement to promptly inform CDM of any inventions, discoveries or innovations related to processes, equipment, or software that results from [his] use of CDM resources, equipment, facilities, and/or expertise."

11. By signing the 2005 Confidentiality and Invention Agreement, Thevar agreed that "CDM will hold the rights, title, and interest to any invention, discovery, or innovation determined by CDM to be <u>related</u> to CDM business interests" (underline in original).

12. On June 2, 2014, Thevar signed a second agreement, entitled "Employee Confidentiality, Invention and Writing Agreement" (the "2014 Confidentiality and Invention Agreement") based on good and valuable consideration including, but not limited to, continued employment at CDM Smith and access to confidential CDM Smith information and materials. Like the prior agreement, Thevar signed the 2014 Confidentiality and Invention Agreement as "Elangovan Karuppasamy." A true and accurate copy of the executed 2014 Confidentiality and Invention Agreement is attached hereto as <u>Exhibit B</u>. (The 2014 Confidentiality and Invention Agreement, together with the 2005 Confidentiality and Invention Agreement, are collectively referred to as the "Confidentiality and Invention Agreements.")

13. The 2014 Confidentiality and Invention Agreement contains an express choice of law clause providing: "[t]his agreement shall be governed by the laws of the Commonwealth of Massachusetts."

14. By signing the 2014 Confidentiality and Invention Agreement, Thevar reaffirmed his confidentiality obligations as laid out in the 2005 Confidentiality and Invention Agreement.

15. Specifically, Thevar agreed in the 2014 Confidentiality and Invention Agreement, that he would not, "during the term of [his] employment with CDM Smith and subsequent to [his] termination with CDM Smith, without the specific and written permission of CDM Smith, disclose to anyone outside of CDM Smith, or use in other than CDM Smith business, any company confidential information or confidential material received or developed during or after [his] employment."

16. The 2014 Confidentiality and Invention Agreement also provided that "all inventions, ideas, writings, or other discoveries" that Thevar may "invent, create, discover, conceive, develop, or first reduce to practice during [his] employment with CDM Smith, whether alone or with others," and which met one or more of the following three criteria, would be "the exclusive property of CDM Smith." Specifically, such inventions, ideas, writings, or other discoveries would be the exclusive property of CDM Smith if they:

   i. were "developed during or in connection with [his] work assignments at CDM Smith"; or

   ii. "involve[d] the use of any equipment, facilities or information of CDM Smith"; or

  iii. "related directly or indirectly to, or are likely to be useful in CDM Smith's business (including actual or demonstrably anticipated research or development projects)."

17. By executing the 2014 Confidentiality and Invention Agreement, Thevar agreed that he assigned "to CDM Smith [his] entire right, title, and interest in any such Inventions, ideas, writings or other discoveries" and agreed that he would "promptly execute any assignment or any other documents, and shall do anything else reasonably necessary to assist CDM Smith in protecting or enforcing its rights to such inventions, ideas, writings or other discoveries…CDM Smith will hold the rights, title, and interest to any inventions, ideas, writings or other discoveries determined by CDM Smith to be <u>related</u> to CDM Smith business interests" (underline in original).

18. Despite his contractual obligations pursuant to the Confidentiality and Invention Agreements, Thevar developed a water management software platform during his employment at the company that directly related to CDM Smith's business and competed with CDM Smith's products. This platform resulted from his use of CDM Smith resources, equipment, facilities, information, and/or expertise. Moreover, it related directly and/or indirectly to, and/or was likely to be useful in CDM Smith's business (including its actual or demonstrably anticipated research or development projects). Thevar embarked upon and pursued this project without informing CDM Smith and with an intention to hide it from CDM Smith until he was in a position to commercially launch this product in competition with CDM Smith and in opposition to its business interests.

19. An article from January 25, 2019 (well over a year before Thevar's resignation and which CDM Smith only recently discovered) discusses how a Kansas City startup fund called Digital Sandbox had granted funds to "Blockchain Water" to create a proof-of-concept for a "water management platform." A true and correct copy of the article is attached hereto as <u>Exhibit C</u>.

20. Thevar worked with startup adviser Lean Start Lab to obtain these funds. Blockchain Water's profile on Lean Start Lab's website indicates that Thevar's product is an "Industrial SaaS" (an acronym for "software as a service"). CDM Smith likewise markets multiple water management platforms as Industrial SaaS products, and Thevar knew this.

21. Blockchain Water's profile on Lean Start Lab's website states that Thevar's "inspiration for Blockchain Water comes from his work creating water models. He noticed that the communication and the collaboration between stakeholders in his industry were very poor and sought to find a way to solve that." The webpage contains images of an early version of NEER's product. A true and correct copy of the webpage is attached hereto as Exhibit D.

22. On January 26, 2019, again over a year before he resigned from CDM Smith, Thevar formed a Missouri limited liability company named Blockchain Water, LLC.

23. On May 13, 2019, Thevar formed a Delaware corporation originally-named Blockchain Water, Inc. Thevar applied in Missouri on June 6, 2019 for a certificate of authority for this corporation to conduct for-profit business in Missouri. In that application, Thevar informed Missouri's Secretary of State that Blockchain Water, Inc.'s purpose was a "smart water management software platform."

24. On May 31, 2019, Thevar dissolved Blockchain Water, LLC, but continued his operations through his Delaware corporation, Blockchain Water, Inc.

25. On April 4, 2020, Thevar changed the name of his Delaware corporation to NEER Technologies, Inc.

26. According to a second news article in early 2020, while still employed by CDM Smith, Thevar was accepted into a startup accelerator program called Gener8tor and received a $100,000 investment. Along with a group of other similarly selected startup companies, this

Gener8tor "cohort" "kicked off on April 16," 2020 according to this article (six days prior to the effective date of Thevar's resignation). A true and correct copy of this article is attached hereto as Exhibit E.

27. Exhibit E states that "NEER developed a real-time water quality and infrastructure management platform. The company's technology…analyzes and scores each water asset on their likelihood/consequence of failure, allowing utility directors to make programmatic monitoring, maintenance and replacement decisions based on real-time data."

28. On April 9, 2020, Thevar submitted his formal notice of resignation to his direct supervisor at CDM Smith, and his last day working for the company was April 24, 2020.

29. An April 22, 2020 news article, published two days prior to the effective date of Thevar's resignation, reports that Thevar was going to be pitching his "real-time water management platform" to the "KC Collective" for investment on April 30. A true and correct copy of this article is attached hereto as Exhibit F.

30. A May 21, 2020 news article also indicates that NEER had already "developed" its platform and reported that "NEER's latest wins include signing up the city of Raytown as a customer." The article states that NEER's $100,000 investment from Gener8tor should "support its goal of expanding its customer base" and help it "build out additional software capabilities. NEER will be focused on serving cities big and small." A true and correct copy of this article is attached hereto as Exhibit G.

31. By October 2020, NEER entered the "Elemental Excelerator's Cohort 9," receiving further investment. Elemental Excelerator reported that NEER was in its "Go-to-Market" phase and stated: "NEER's founder, Elango Thevar, has spent his career consulting with utility clients on this very problem and built the company to provide them with unmatched intelligence in an

increasingly crowded field of asset management software….NEER simply does more at a lower price point than its competitors." This article is attached hereto as Exhibit H.

32. Further demonstrating NEER's similarity to CDM Smith's products, NEER's website describes it as "a comprehensive integrated real time water management platform. NEER uses Artificial Intelligence (AI), specifically Machine Learning, to model and assess the risk condition of drinking water distribution mains, sewer and stormwater collection systems."

33. NEER advertises services including: managing and designing water systems, IOT integration and real time monitoring, full geographic information system support, and "data analytics/decision support."

34. The services and features NEER offers are highly similar to – and directly competitive with – a variety of CDM Smith's software solutions, including CDM Smith's Water Analytics and PipeCAST™ systems. PipeCAST™, for example, is a cloud-based software platform created to help utilities gain insight into the performance of their collection systems so they can proactively prepare and respond to the extreme weather events. PipeCAST™ is designed to integrate a client's system's data sources to provide engineering insights.

35. Thevar was well-aware of PipeCAST™ from his work for CDM Smith, and even helped develop marketing materials for PipeCAST™ in a request for proposal for at least one large municipality while employed by CDM Smith.

36. Thevar never informed CDM Smith that he had formed NEER (formerly Blockchain Water, Inc.) or Blockchain Water, LLC, while employed at CDM Smith, nor did he inform CDM Smith about his work developing a clearly competitive software platform while also working for and receiving wages from CDM Smith and in violation of his Confidentiality and Invention Agreements with CDM Smith.

37. CDM Smith became aware of Thevar and NEER's activity in violation of Thevar's contractual obligations and, through counsel, sent a cease and desist letter to Thevar and NEER on November 12, 2020. A true and accurate copy of the cease and desist letter is attached hereto as Exhibit I.

38. Thevar responded to the cease and desist through counsel. He has refused to take responsibility for his actions and, in fact, has continued to operate NEER using the intellectual property that Thevar was contractually obligated to assign to CDM Smith and/or as a matter of his fiduciary duties to CDM Smith.

## Jurisdiction and Venue

39. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000 and there is diversity of citizenship between the Plaintiff and Defendants. CDM Smith is a citizen of the Commonwealth of Massachusetts. Thevar is a citizen of Missouri, and NEER is a citizen of Delaware and Missouri.

40. Thevar is subject to the personal jurisdiction of this Court under G. L. c. 223A, § 3 and consistent with due process of law. This case arises out of Thevar's failure to tender, assign, and deliver inventions, ideas, writings and/or discoveries to CDM Smith in Massachusetts in violation of his contractual and fiduciary obligations to his long-time Massachusetts employer that were governed by Massachusetts law. Accordingly, this action arises from Thevar's transaction of business in this commonwealth, his contracting to provide services or things in this commonwealth, his causing of tortious injury from an omission in this commonwealth, and/or his causing of tortious injury in this commonwealth where he engaged in a persistent course of conduct of obtaining wages from his employer in this commonwealth.

41. NEER is subject to the personal jurisdiction of this Court under G. L. c. 223A, § 3 and consistent with due process of law. This case arises out of NEER's tortious interference with contracts governed by Massachusetts law and its wrongful possession of CDM Smith's property by interfering with Thevar's obligations to tender, assign, and deliver inventions, ideas, writings and/or discoveries to CDM Smith in Massachusetts. Accordingly, this action arises from NEER's causing tortious injury by an omission in this commonwealth and its wrongful retention and use of CDM Smith's property.

42. In the alternative, NEER is subject to the personal jurisdiction of this Court as the alter ego of Thevar. Thevar is NEER's President, CEO, and founder. Thevar is an active and direct participant in NEER and exercises pervasive control over its activities. Thevar has tortiously used NEER, and his relationship with NEER, to unfairly and deceptively evade his responsibilities to CDM Smith and to exploit and profit from the inventions, ideas, writings and/or discoveries that Thevar was obligated to tender, assign, and deliver to CDM Smith, resulting in fraudulent and/or injurious consequences to CDM Smith.

43. Venue as to NEER is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391 because it is subject to personal jurisdiction in Massachusetts and, as such, resides in Massachusetts with respect to this action.

44. Venue as to Thevar is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred, and/or a substantial part of property that is the subject of the action is situated in Massachusetts.

## COUNT I
### (Breach of Contract – Against Defendant Thevar and NEER as Alter Ego)

45. CDM Smith's allegations contained in Paragraphs 1 through 44 above are incorporated by reference as if fully set forth herein.

46. The 2005 Confidentiality and Invention Agreement is a valid and enforceable agreement between CDM Smith and Thevar.

47. The 2014 Confidentiality and Invention Agreement is a valid and enforceable agreement between CDM Smith and Thevar.

48. CDM Smith performed its obligations pursuant to the Confidentiality and Invention Agreements, including giving Thevar access to confidential and proprietary information and materials as well as providing him wages and other benefits.

49. Pursuant to the 2014 Confidentiality and Invention Agreement, Thevar was required to "promptly execute any assignment or any other documents, and shall do anything else reasonably necessary to assist CDM Smith in protecting or enforcing its rights to such inventions, ideas, writings or other discoveries" that Thevar invented, created, discovered, conceived, developed, or first reduced to practice while employed by CDM Smith and which met certain enumerated criteria.

50. Thevar invented, created, discovered, conceived, developed, or first reduced to practice inventions, ideas, writings or other discoveries embodied in the NEER platform while employed by CDM Smith during or in connection with his work assignments at CDM Smith, involving the use of equipment, facilities or information of CDM Smith, and/or the NEER platform is related directly or indirectly to, or are likely to be useful in CDM Smith's business (including actual or demonstrably anticipated research or development projects).

51. Thevar breached the 2014 Confidentiality and Invention agreement, including by:

   a. breaching his commitment that the foregoing inventions, ideas, writings or other discoveries "shall be the exclusive property of CDM Smith";

  b. breaching his promise to "promptly and fully communicate to CDM Smith all such inventions, ideas, writings, or other discoveries" made or conceived by him, "either alone or with others" during the time of his employment;

  c. acting contrary to his prospective assignment "to CDM Smith [of his] entire right, title, and interest in [the foregoing] inventions, ideas, writings or other discoveries";

  d. breaching his obligation to "promptly execute any assignment or any other documents" and doing anything else reasonably necessary to assist CDM Smith in protecting or enforcing its rights to such inventions, ideas, writings or other discoveries; and/or

  e. failing to make records relating to such inventions "available to CDM Smith at all times."

52. The 2005 Confidentiality and Invention Agreement further provided that Thevar would "promptly inform CDM of any inventions, discoveries or innovations related to processes, equipment, or software that results from [his] use of CDM resources, equipment, facilities, and/or expertise." Furthermore, by signing the 2005 Confidentiality and Invention Agreement, Thevar agreed that "CDM will hold the rights, title, and interest to any invention, discovery, or innovation determined by CDM to be <u>related</u> to CDM business interests" (underline in original). Thevar breached both of these contractual obligations with respect to inventions, ideas, writings or other discoveries embodied in the NEER platform.

53. Thevar breached the 2005 Confidentiality and Invention Agreement failed to inform CDM Smith of the intellectual properties he developed.

54. CDM Smith has been and continues to be irreparably harmed by Thevar's failure to assign the intellectual property to CDM Smith.

55. CDM Smith has sustained damages as a result of Thevar's breach of the Confidentiality and Invention Agreements and Thevar is liable for those damages.

## Count II
### (Breach of Fiduciary Duty – Against Defendant Thevar and NEER as Alter Ego)

56. CDM Smith's allegations contained in Paragraphs 1 through 55 above are incorporated by reference as if fully set forth herein.

57. CDM Smith's business is reliant on, and derives a significant amount of its value from, technology, software, and intellectual property, which are the lifeblood of CDM Smith's business. To further its business interests, CDM Smith must place a high degree of trust and confidence in certain employees to develop its technology, while keeping CDM Smith's intellectual property safeguarded and under the utmost protections of confidentiality.

58. As part of his employment with CDM Smith as a Water Resources Engineer, Task Manager and Lead Modeler, in CDM Smith's water resources consulting business, Thevar was given in-depth access to proprietary client information and confidential business intellectual property directly related to CDM Smith's water resources business and products. Thevar was obligated to maintain these confidences and the confidentiality of these materials under his Confidentiality and Invention Agreements.

59. Thevar occupied a position of trust and confidence with CDM Smith. He owed a fiduciary duty of loyalty to CDM Smith and was further required to protect the interests of CDM Smith.

60. Thevar betrayed the trust and confidence of CDM Smith and breached his fiduciary duty of loyalty to CDM Smith.

61. Thevar conceived of and developed his NEER "smart water management software platform," which is related to and competitive with CDM Smith's water analytics and

PipeCAST™ platforms, during his employment with CDM Smith without ever disclosing these efforts to CDM Smith.

62. Thevar failed to assign to CDM Smith the intellectual property used by NEER, as required by the Confidentiality and Invention Agreements for his own pecuniary benefit and to the detriment of CDM Smith.

63. Upon information and belief, Thevar even marketed his competitive product through NEER to at least one municipality while employed by CDM Smith.

64. CDM Smith has been and continues to be irreparably harmed by Thevar's continued failure to protect the interests of and remain loyal to CDM Smith.

65. CDM Smith has incurred damages and loss as a result of Thevar's breach of fiduciary duty of loyalty and Thevar is liable for those damages.

66. By breaching his fiduciary duty to CDM Smith, Thevar forfeited the right to the compensation received at least from January 26, 2019 through April 24, 2020, and CDM Smith is entitled to be reimbursed for all monies paid to Thevar during that time period, as well as interest accrued.

## COUNT III
**(Tortious Interference with Contract – Against Defendant NEER)**

67. CDM Smith's allegations contained in Paragraphs 1 through 66 above are incorporated by reference as if fully set forth herein.

68. The Confidentiality and Invention Agreements between Thevar and CDM Smith are valid and enforceable contracts from which CDM would benefit.

69. NEER had knowledge of the Confidentiality and Invention Agreements between Thevar and CDM Smith.

70. By engaging in business which it knew caused Thevar to directly violate the Confidentiality and Invention Agreements, NEER intentionally and maliciously interfered with the Confidentiality and Invention Agreements.

71. CDM Smith has been and continues to be irreparably harmed by NEER's tortious interference with the Confidentiality and Invention Agreements.

72. NEER acted for an improper purpose and/or by improper means to interfere with the Confidentiality and Invention Agreements for its pecuniary gain and to the detriment of CDM Smith, and CDM Smith has suffered damages as a result of NEER's conduct.

**WHEREFORE,** Plaintiff CDM Smith Inc. respectfully requests the following relief:

a) Grant a permanent injunction enjoining Defendants Elangovan Thevar and NEER Technologies, Inc., from disclosing or using the intellectual property and other materials that should have been formally assigned to CDM Smith Inc., including but not limited to the NEER platform;

b) Enter judgment against Elangovan Thevar and NEER on all counts of this Complaint;

c) Award CDM Smith Inc. money damages;

d) Award CDM Smith Inc. restitution and/or the amount to which Elangovan Thevar and NEER have been unjustly enriched, including all moneys paid during the time period that Elangovan Thevar was breaching his fiduciary duty to CDM Smith Inc. and including all revenues received by NEER as a result of using CDM Smith's intellectual property and other materials;

e) Declare that the intellectual property and other materials developed by Thevar during his employment with CDM Smith as described herein, including but not limited to the NEER platform, are the sole and exclusive property of CDM Smith;

f) Order Elangovan Thevar, and to the extent necessary, NEER, to formally assign the intellectual property and other materials as described herein to CDM Smith Inc., including but not limited to the NEER platform;

g) Award CDM Smith Inc. its costs;

h) Award CDM Smith Inc. pre- and post-judgment interest;

i) Award CDM Smith Inc. its reasonable attorney's fees, expenses and costs;

j) Grant such other relief as may be just and proper.

## **JURY DEMAND**

Plaintiff CDM Smith Inc. demands a jury trial on all claims so triable.

Dated: February 12, 2021

Respectfully submitted,

CDM Smith Inc,

By its attorneys,

*/s/ Seth B. Orkand*
Seth B. Orkand (BBO #669810)
sorkand@rc.com
Julianna M. Charpentier (BBO #703286)
jcharpentier@rc.com
Robinson & Cole LLP
One Boston Place, Floor 25
Boston, MA  02108-4404
(617) 557-5900

John L. Cordani (*pro hac vice forthcoming*)
jcordani@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
(860) 275-8200