UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CDM SMITH, INC., <br>     Plaintiff, <br> <br>        v. <br> <br> ELANGOVAN THEVAR and <br> NEER TECHNOLOGIES, INC. <br>     Defendants. | ) <br> ) <br> ) <br> )    C.A. No. 1:21-10249-MLW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

MEMORANDUM AND ORDER

WOLF, D.J.                                          September 30, 2022

## I.   SUMMARY

Plaintiff CDM Smith, Inc. ("CDM") brought this action against defendants Elangovan Thevar and NEER Technologies, Inc. ("NEER") on February 12, 2021. See Complaint (Dkt. No. 1). CDM alleges claims for: (1) Breach of Contract against Thevar and NEER as Thevar's alter ego; (2) Breach of Fiduciary Duty against Thevar and NEER as Thevar's alter ego; and (3) Tortious Interference against NEER. See id.

Defendants have moved to dismiss this case for lack for personal jurisdiction over both defendants pursuant to Fed. R. Civ. P. 12(b)(2). See Dkt. No. 8. CDM opposes the motion to dismiss and moves for jurisdictional discovery concerning defendant NEER if the motion to dismiss it is not denied. See Dkt. No. 15.

In summary, the court finds that CDM has made a prima facie showing that this court has personal jurisdiction over Thevar. Therefore, the court is denying the motion to dismiss as to Thevar.

CDM has not made a prima facie showing of personal jurisdiction with regard to NEER. However, CDM's allegations create a colorable claim that jurisdiction exists. Therefore, the court is allowing CDM's motion for limited jurisdictional discovery and denying the motion to dismiss as to defendant NEER without prejudice to a renewed motion after limited discovery concerning the issue of personal jurisdiction.

II.   FACTS

CDM is an engineering and construction firm incorporated in Massachusetts with its principal place of business in Boston. See Complaint (Dkt. No. 1) at ¶¶2, 5. CDM creates and implements software used to manage municipal water supplies. See id. at ¶5. Thevar is an individual residing in Kansas City, Missouri. See id. at ¶3. He is the President, Chief Executive Officer, and Founder of NEER. See id. at ¶4. NEER is a Delaware corporation with its principal place of business in Kansas City, Missouri. See id.

Thevar was employed as a Water Resources Engineer at CDM's Kansas City office from September 2005 to April 2020. See id. at ¶6. When Thevar was hired by CDM Smith in 2005, he signed an "Employee Confidentiality and Invention Development Agreement" (the "2005 Agreement"), attached to the Complaint as Exhibit A.

2

See id. at ¶7; see also Exhibit A, Dkt. No. 1-1. Pursuant to the 2005 Agreement, Thevar agreed to inform CDM promptly of any inventions he developed that resulted from his use of CDM resources. See id. at ¶10. The 2005 Agreement also provides that CDM holds the rights and title to any of Thevar's inventions that are related to CDM's business interests. See id. at ¶11.

In 2014, Thevar signed a second agreement titled "Employee Confidentiality, Invention and Writing Agreement" (the "2014 Agreement"), attached to the Complaint as Exhibit B. See id. at ¶12; see also Exhibit B, Dkt. No. 1-1. The 2014 Agreement provides that any inventions developed by Thevar during his employment at CDM would be CDM's exclusive property if they were developed in connection with his work at CDM, involved the use of CDM's resources, or "related directly or indirectly to, or are likely to be useful in CDM Smith's business." Id. at ¶16 (quoting 2014 Agreement at 3). The 2014 Agreement includes a choice of law clause stating that "[t]his agreement shall be governed by the laws of the Commonwealth of Massachusetts." Id. at ¶13 (quoting 2014 Agreement at 4).

In 2019, while Thevar was still employed by CDM, he allegedly formed a startup company called NEER Technologies, Inc. (initially called Blockchain Water) and began raising funds for the company to create a water-management software platform. See id. at ¶¶19-22, 24. CDM alleges that, while employed at CDM, Thevar developed

NEER's water management software platform, which both relates to CDM's business and competes with CDM's products. See id. at ¶¶18, 34.  In addition, Thevar allegedly used CDM's resources and information to develop the NEER platform. See id.

Thevar resigned from CDM in April 2020. See id. at ¶28. CDM Smith alleges that Thevar intentionally hid the NEER platform from CDM "until he was in a position to commercially launch this product in competition with [CDM] and in opposition to its business interests." Id.

In its opposition, CDM includes "additional facts relevant to establishing personal jurisdiction over defendants Thevar and NEER." See Opp. Mot. Dismiss (Dkt. No. 14) at 3. CDM alleges that, during Thevar's employment, he submitted at least 76 expenses for reimbursement which came from CDM's Massachusetts bank account. See id. (citing Ex. A, Affidavit of Kristen McCleen (Dkt. No. 14-1) ("McKleen Aff.") at ¶7).  Thevar allegedly used a Massachusetts based travel company to book his business travel while employed at CDM. See id. (citing McKleen Aff. at ¶7). Thevar also worked and collaborated with CDM employees located in Massachusetts as part of his regular work responsibilities. See id. at 4 (citing McKleen Aff. at ¶9). In particular, Thevar emailed a Massachusetts-based employee named Matthew Gamache about a CDM water-management platform at the same time he was developing NEER's platform. See id. (citing Ex. B, Affidavit of Matthew Gamache (Dkt. No. 14-2)

4

("Gamache Aff.") at ¶3). Gamache and another Massachusetts-based CDM employee responded to Thevar's email with confidential information about PipeCAST and another CDN water management software platform. See id.

CDM now seeks a declaratory judgment that the intellectual property developed by Thevar during his employment at CDM, including the NEER platform, is owned by CDM, formal assignment of this property to CDM, a permanent injunction enjoining defendants from disclosing and using its intellectual property, money damages, restitution, and attorneys' fees and costs. See id. at 15-16.

Defendants have filed a Motion to Dismiss for Lack of Jurisdiction. See (Dkt. No. 8) ("Mot. Dismiss"); see also Memorandum in Support of Motion to Dismiss (Dkt. No. 9) ("Memo. Mot. Dismiss"); Affidavit of Thevar in Support of Motion to Dismiss (Dkt. No. 10) ("Thevar Aff."). Defendants argue that the Complaint should be dismissed because this court does not have personal jurisdiction over Thevar or NEER. See id.

CDM has filed an Opposition to the Motion to Dismiss. See Dkt. No. 14 ("Opp. Mot. Dismiss"). CDM subsequently filed a Motion for Jurisdictional Discovery for defendant NEER. See Dkt. No. 15 ("Mot. Discovery"); see also Memorandum in Support of Motion for Jurisdictional Discovery (Dkt. No. 9) ("Memo. Mot. Discovery"). Although CDM maintains that both defendants are subject to personal

jurisdiction in Massachusetts, it seeks limited jurisdictional discovery to determine the full extent of NEER's contacts with Massachusetts. See id. at 1-2.

Defendants have filed a joint Reply in support of their Motion to Dismiss and Opposition to CDM's Motion for Jurisdictional Discovery. See Dkt. No. 19 ("Def. Reply").

III. DISCUSSION

A. Legal Standard

When the court's personal jurisdiction over a defendant is challenged, the plaintiff bears the burden to establish that jurisdiction exists. See Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010). Three methods exist for determining whether the plaintiff has met its burden at the motion to dismiss stage. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).[1] The "prima facie" method is most appropriate in cases in which the parties have not presented conflicting versions of the facts. See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 712 (1st Cir. 1996).

To make a prima facie showing of jurisdiction, the plaintiff "cannot rest upon the pleadings but is obliged to adduce evidence

---

[1] The three possibly applicable standards are the "prima facie standard," the "preponderance standard," and the "likelihood standard." See Foster Miller, 46 F.3d at 145-47. Defendants employ the prima facie method in their Motion to Dismiss, see Dkt. No. 9 at 4, and CDM implicitly relies on it, see generally Dkt. No. 14. Therefore, the court is utilizing that standard.

of specific facts." Foster-Miller, 46 F. 3d at 145; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992) ("[P]laintiffs may not rely on unsupported allegations in their pleadings to make a prima facie showing of personal jurisdiction."). The court must "consider . . . whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Foster-Miller, 46 F.3d at 145. The court accepts the plaintiff's proffered and properly documented facts as true "irrespective of whether the defendant disputes them, and in so doing, construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). "Those facts put forward by the defendant become part of the mix only to the extent that they are uncontradicted." Id.

Certain cases may warrant jurisdictional discovery. "A diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may . . . be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001). The "diligence" prong "includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." Id. at 626. The "colorable" standard requires some showing that discovery is needed or likely to be

7

useful. See Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 38 (1st Cir.2000). However, "even when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required." Swiss Am. Bank, 274 F.3d at 625-26. Nevertheless, "courts generally will grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Procs., 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015).

B. Analysis

CDM has made a prima facie showing of personal jurisdiction over Thevar, but not NEER. However, as explained below, the court finds that limited discovery on the issue of personal jurisdiction as to NEER is justified.

A federal district court may exercise personal jurisdiction over non-resident defendants to the same extent as a state court in the state in which the district court is located. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F. 3d 42, 51 (1st Cir. 2002). Massachusetts courts have personal jurisdiction over non-residents only if jurisdiction comports with Due Process and is permitted by a Massachusetts statute, such as the long-arm statute, Mass. Gen. Laws ch. 223A, §3. See Bulldog

8

Invs. Gen. P'ship v. Sec'y of the Commonwealth, 457 Mass. 210, 215 (2010).

There are two types of personal jurisdiction, specific and general. Each is subject to its own set of statutory and Due Process constraints. Specific jurisdiction is permissible under Massachusetts General Laws Chapter 223A, §3. Among other things, §3 authorizes personal jurisdiction over "a person, who acts directly or by an agent, as to a cause of action . . . arising from the person's . . . transacting any business in [Massachusetts]." For jurisdiction to exist under this provision of the Massachusetts statute, "the facts must satisfy two requirements -- the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Tatro v. Manor Care, Inc., 416 Mass. 763, 769-71 (1994); see also Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 146 (1st Cir. 2010).

The court must "construe the 'transacting any business' language of the statute in a generous manner, and, in applying the clause to the[ ] facts, [ ] must focus on whether the defendant[] attempted to participate in the commonwealth's economic life." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) (quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992)) (internal marks omitted). Whether a claim "arises from" the transacted business depends on "whether

9

the transacted business was a 'but for' cause of the harm alleged in the claim." Id. (citing Tatro v. Manor Care, Inc., 416 Mass. 763, 625 N.E.2d 549, 551 (1995)).

If the requirements of Massachusetts General Laws Chapter 223A, §3 are satisfied, Due Process also requires that defendants have sufficient "minimum contacts" with Massachusetts so that subjecting it to that forum's jurisdiction will not offend the "traditional notions of fair play and substantial justice." United Elec. Workers, 960 F.2d at 1087 (quoting Int'l Shoe Co. v. Washington, 325 U.S. 310, 316 (1945)). A court may only exercise jurisdiction over a defendant whose "conduct and connection with the forum State" are "such that [the defendant] should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. 286, 297 (1980). The First Circuit has held that Due Process requires three elements be satisfied before a court may exercise specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089.

"The first inquiry, relatedness, asks whether 'the claim underlying the litigation . . . directly arise[s] out of, or

10

relate[s] to, the defendant's forum-state activities.'" <u>Astro-Med,
Inc. v. Nihon Kohden Am., Inc.</u>, 591 F.3d 1, 9 (1st Cir. 2009)
(quoting <u>N. Laminate Sales, Inc. v. Davis</u>, 403 F.3d 14, 25 (1st
Cir. 2005)). "[T]here must be more than just an attenuated
connection between the contacts and the claim; the defendant's in-
state conduct must form an important, or [at least] material,
element of proof in the plaintiff's case." <u>Phillips v. Prairie Eye
Ctr.</u>, 530 F. 3d 22, 27 (1st Cir. 2008). This means that the
defendant's in-forum conduct must be at least the but-for cause of
the plaintiff's injury, and the conduct's connection to the
plaintiff's claim may not be too "attenuated or indirect." <u>Harlow
v. Children's Hospital</u>, 432 F. 3d 50, 60-61 (1st Cir. 2005). "The
relatedness test is a 'flexible, relaxed standard.'" <u>Id.</u>

The "purposeful availment" requirement "represents a rough
quid pro quo: when a defendant deliberately targets its behavior
toward the society or economy of a particular forum, the forum
should have the power to subject the defendant to judgment
regarding that behavior." <u>Carreras v. PMG Collins, LLC</u>, 660 F.3d
549, 555 (1st Cir. 2011). "The cornerstones of this inquiry are
voluntariness and foreseeability." <u>C.W. Downer & Co. v. Bioriginal
Food & Sci. Corp.</u>, 771 F.3d 59, 66 (1st Cir. 2014). The court must
determine whether the defendant "'deliberately' has engaged in
significant activities within a state . . . or has created
'continuing obligations' between himself and residents of the

11

forum," such that "he manifestly has availed himself of the privilege of conducting business" in the state and "shielded" himself with the "benefits and protections of the forum's laws." Burger King v. Rudzewicz, 471 U.S. 462, 474-75 (1985). His interactions with in-state residents "must be voluntary and not based on the unilateral actions of another party." Adelson, 510 F.3d at 50; see also World-Wide Volkswagen, 444 U.S. at 298. Moreover, they cannot be so "'[r]andom,' 'fortuitous,' or 'attenuated'" that the defendant could not foresee litigation in the forum. Burger King, 471 U.S. at 475.

Finally, even where relatedness and purposeful availment are satisfied, the court may exercise specific personal jurisdiction only if doing so is "reasonable" in light of the First Circuit's "Gestalt factors." See, e.g., Adams, 601 F.3d at 5. These include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Nowak v. Tak How Invs., 94 F.3d 708, 716 (1st Cir. 1996).

In this case, CDM has made a prima facie showing of personal jurisdiction as to Thevar because it has shown that Thevar purposefully availed himself of this forum.

As an initial matter, "where the parties do not challenge the application of Massachusetts's long-arm statute, courts consider

12

'any argument that the long-arm statute does not reach as far as the Fifth Amendment allows' waived, and 'proceed directly to the constitutional inquiry.'" Get In Shape Franchise, Inc. v. TFL Fishers, LLC, 167 F. Supp. 3d 173, 191 (D. Mass. 2016) (Saris, J.) (quoting Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016); see also C.W. Downer & Co., 771 F.3d at 65.+ Here, neither party addresses the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, §3, so the court proceeds to the constitutional analysis.[2]

Thevar has sufficient minimum contacts with Massachusetts to satisfy constitutional due process requirements. Here, CDM's claim for breach of contract arises out of Thevar's alleged breach of the 2005 and 2014 Agreements. One of these agreements, the 2014 Agreement, was expressly governed by Massachusetts law. See Complaint at ¶13. In addition, when Thevar signed both Agreements, he knew that CDM was headquartered in Massachusetts. See id. at ¶16. Therefore, the CDM's claims for breach of contract "directly arise[s] out of, or relate[s] to, the defendant's forum-state activities.'" Astro-Med, Inc., 591 F.3d 1 at 9; see also Lombard, 729 F. Supp. 2d at 437 ("Since [plaintiff's] claim 'arises out of'

---

[2] CDM states that its opposition is directed only at constitutional jurisdictional requirements because defendants "have expressly declined to rely upon any argument under Massachusetts' long-arm statute." See Opp. Mot. Dismiss (Dkt. No. 14) at 7.

[defendants' employment] contracts, the first jurisdictional requirement is met.").

Similarly, CDM's claim for breach of fiduciary duty arises out of Thevar's employment by CDM, a Massachusetts-based company. Thevar allegedly knew that CDM was based in Massachusetts when he accepted their offer of employment. See Complaint at ¶¶6, 40. During his employment, Thevar communicated and collaborated with Massachusetts employees and accepted paychecks listing a Massachusetts address. See Complaint at ¶¶6, 40; Opp. Mot. Dismiss (Dkt. No. 14) at 8-9. Given that "the relatedness test is, relatively speaking, a flexible, relaxed standard," Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994), this prong of the minimum contacts analysis is satisfied.

In addition, Thevar has purposefully availed himself of the forum. In Lombard, the district court found that defendants purposefully availed themselves of this forum because they "were employed by a Massachusetts' corporation, received paychecks from Massachusetts, and signed a contract with a Massachusetts choice of law provision." 729 F. Supp. 2d at 437. Similarly, Thevar was employed by a Massachusetts corporation, received paychecks from Massachusetts, and signed the 2014 Agreement, which contained a Massachusetts choice of law provision. See Complaint at ¶¶2, 6, 13. Therefore, Thevar could "reasonably anticipate being haled

14

into court" in Massachusetts. World-Wide Volkswagen Corp., 444 U.S. at 297.

In addition, the court's exercise of jurisdiction is reasonable in light of the Gestalt factors. Although resolution of this dispute may impose some burden on Thevar by requiring him to travel to Massachusetts, this is not so great a burden as to make exercise of jurisdiction unreasonable. See Pritzker, 42 F.3d at 64 ("this factor is only meaningful where a party can demonstrate some kind of special or unusual burden [and i]n the modern era, the need to travel between New York and Puerto Rico creates no especially ponderous burden for business travelers."). Moreover, like in Lombard, "[s]ince the contract is governed by Massachusetts law, and at the time defendants were employed at [the plaintiff company], it was a Massachusetts company, Massachusetts adjudicatory interests lean in favor of exercising jurisdiction." 729 F. Supp. 2d at 437. Therefore, CDM has made a sufficient showing of specific jurisdiction over Thevar to survive the motion to dismiss as to Thevar.

However, CDM has not made a prima facie showing of personal jurisdiction as to NEER. CDM advances two theories of personal jurisdiction as to NEER. For the reasons described below, both theories are unmeritorious on the present record.

First, CDM argues that constitutional jurisdictional requirements are satisfied as to NEER because "NEER knew that

accepting and commercializing the software from Thevar in a manner competitive with [CDM] would cause Thevar to breach his Massachusetts contract with [CDM] and damage [CDM] in Massachusetts." Opp. Mot. Dismiss (Dkt. No. 14).

In support of this theory, CDM relies on Astro-Med. In that case, the First Circuit's jurisdictional inquiry focused on the location where the plaintiff suffered the effects of the defendant's conduct, because the defendant's "conduct in Florida and California was a cause of the breach of contract—the actual injury—that occurred in Rhode Island." 591 F.3d at 10. The First Circuit explained that defendant "knew that by employing [a Florida resident], it was running the risk that [the resident] would thereby have breached his Rhode Island contract with a Rhode Island company and any ensuing suit would be initiated in Rhode Island and interpreted under Rhode Island law's." Id.

Here, CDM argues that NEER "knew that by accepting and commercializing software rightfully belonging to [CDM] in Massachusetts that it was causing Thevar to breach his Massachusetts contract, making this ensuing suit to hold NEER accountable for its actions in Massachusetts foreseeable." Opp. Mot. Dismiss (Dkt. No. 14) at 16. Therefore, like in Astro-Med, CDM focuses on the location where CDM allegedly suffered the effects of NEER's conduct in order to argue that this court has personal jurisdiction over NEER.

16

However, recent precedent has called into question the validity of the jurisdictional analysis in Astro-Med. In Walden v. Fiore, the Supreme Court reversed a finding of personal jurisdiction which focused on the defendant's knowledge of plaintiff's "strong forum connections" and the fact that plaintiff "suffered foreseeable harm" in the forum state. 571 U.S. 277, 289 (2014). The Court explained that "[t]his approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." Id. Similarly, in Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty., the Supreme Court explained that the "primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State." 137 S. Ct. 1773, 1779, 198 L. Ed. 2d 395 (2017) (citing Walden, 587 U.S. at 282-287; see also Gulf Oil Ltd. P'ship v. Petroleum Mktg. Grp., Inc., 308 F. Supp. 3d 453, 460 (D. Mass. 2018) ("Whether Astro-Med would be decided the same way after Walden and Bristol-Myers Squibb is open to serious question."); Guaranteed Rate, Inc. v. Conn, 264 F. Supp. 3d 909, 919 (N.D. Ill. 2017) ("Walden calls into question the First Circuit's expansive application of Calder in Astro-Med.")

In addition, since Astro-Med, the First Circuit has explained that "in-forum effects of non-forum activity, standing alone, [are] insufficient to support personal jurisdiction." A Corp. v.

17

All Am. Plumbing, Inc., 812 F.3d 54, 60 (1st Cir. 2016) (citing Sawtelle v. Farrell, 70 F.3d 1381, 1390-91 (1st Cir. 1995)); see also Gulf Oil Ltd. P'ship, 308 F. Supp. 3d at 462 ("[T]he First Circuit has apparently implicitly abandoned the Astro-Med formulation(s) . . . the court has, consistently with Walden and inconsistently with Astro-Med, re-emphasized that for a plaintiff's claims to be 'related to' a defendant's in-forum contacts, something more would be necessary than the bare fact that the plaintiff 'felt the effects' of the defendant's out-of-state conduct at its home within the forum.") (citing A Corp., 812 F.3d at 60).

In light of these decisions, CDM has not made a prima facie showing that NEER has sufficient minimum contacts with Massachusetts to satisfy constitutional due process requirements. It is not enough that NEER allegedly knew that it was causing Thevar to breach his contract with CDM, a Massachusetts company, and therefore causing an injury that would be suffered by CDM in Massachusetts. These "in-forum effects of non-forum activity, standing alone, [are] insufficient to support personal jurisdiction." A Corp., 812 F.3d at 60.

In the alternative, CDM argues that personal jurisdiction over NEER exists because NEER is Thevar's alter ego. "This is a difficult theory because it depends on a piercing of the corporate form, an entity of which Massachusetts law is especially

18

protective." Harrelson v. Seung Heun Lee, 798 F. Supp. 2d 310, 315 (D. Mass. 2011).

"Ordinarily, courts respect the legal independence of a corporation and its subsidiary when determining if a court's jurisdiction over the offspring begets jurisdiction over the parent." United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1091. However, "'federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." Harrelson, 798 F. Supp. 2d at 315-16 (D. Mass. 2011) (quoting Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 653 (5th Cir. 2002)). "The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purpose of the International Shoe [Co. v. Washington, 326 U.S. 310 (1945)] due process analysis." Id. (quoting Patin, 294 F.3d at 653). "In the First Circuit, this has generally been seen as analogous to piercing the corporate veil." Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 372 (D. Mass. 2017)

(citing United, 960 F.2d at 1091; Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007)).

"In Massachusetts, the standard for piercing the corporate veil 'is a demanding one.' . . . The corporate veil 'may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity.'" Medici, 239 F. Supp. 3d at 372 (quoting Lothrop v. N. Am. Air Charter, Inc., 95 F. Supp. 3d 90, 100 (D. Mass. 2015). Under Massachusetts law, courts can pierce the corporate veil when "there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship." Harrelson, 798 F. Supp. 2d at 317 (quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619, 233 N.E.2d 748 (1968) (internal quotations omitted); see also Medici, 239 F. Supp. 3d at 372.

Here, CDM has not now provided sufficient evidence, that if credited, would supply all facts necessary to pierce the corporate veil or justify a finding of personal jurisdiction concerning NEER. See Foster-Miller, 46 F.3d at 145. CDM's alter ego theory is based on the allegations that Thevar is the founder, President, and CEO of NEER, see Complaint (Dkt. No. 1) at ¶3, and that Thevar filed the company's formation documents, see id. at ¶¶22-23. CDM also attached to its Complaint a June 2020 news article stating that

20

NEER is "founded and led by [Thevar]." Complaint, Ex. E (Dkt. No. 1-5). However, CDM has failed to provide evidence of any specific details about Thevar's participation in or control over NEER's operations.

In Harrelson, the district court pierced the corporate veil to find that two businesses were the alter ego of a defendant when plaintiff alleged that: "[a]ll of the individuals actually responsible for the operations of the [businesses] are disciples [of defendant] that are fanatically devoted to him and his 'vision' and subject to his absolute control and dominion", "the interests of and ownership in the two corporations are so merged with [defendant's] personality as to eradicate any independent corporate existence on their part", and defendant "completely controlled, dominated, managed and operated each of the affiliated business entities and intermingled the funds, assets and employees of each to suit his convenience." 798 F. Supp. 2d at 316.[3]

By contrast, in this case, CDM relies only on Thevar's title as President and CEO of NEER and the fact that Thevar signed NEER's formation documents. See Opp. Mot. Dismiss (Dkt. No. 14) at 17-18. Other courts have found similar evidence insufficient to pierce the corporate veil. For example, in Lothrop, the court declined to

---

[3] In Harrelson, 798 F. Supp. 2d at 314, the district court focused on plaintiff's allegations concerning personal jurisdiction rather than on the evidence necessary to satisfy the prima facie standard.

pierce the corporate veil between two companies even though the same person was President, CEO, and director of both companies. 95 F. Supp. 3d at 102.

In view of the demanding standard for piercing the corporate veil, CDM has not alleged, let alone provided adequate evidence to support a finding of sufficient facts to prove an alter ego theory of jurisdiction in this case. See Medici, 239 F. Supp. at 372 (facts not sufficient to pierce the corporate veil when plaintiff proffered evidence that companies "worked together", one company "took on certain responsibilities" that the other company was obligation to perform, "several individuals serve as officers of both [companies], and the [companies'] websites suggest that the corporations have a close working relationship"); Lothrop, 95 F. Supp. 3d at 103 ("common ownership and management as well as cooperation and some sharing of resources" and "a high degree of cooperation between the two corporations" not sufficient to pierce corporate veil").

However, CDM has presented a colorable claim that the court has jurisdiction over NEER. Therefore, it is appropriate to permit limited discovery to develop that claim. See Swiss Am. Bank, 274 F.3d at 625.

As explained earlier, CDM has proffered evidence that this court has personal jurisdiction over NEER based on NEER's knowledge "that by accepting and commercializing software rightfully

belonging to [CDM] in Massachusetts [it] was causing Thevar to breach his Massachusetts contract, making this ensuing suit to hold NEER accountable for its actions in Massachusetts foreseeable." Opp. Mot. Dismiss (Dkt. No. 14) at 16. Although "in-forum effects of non-forum activity, standing alone, [are] insufficient to support personal jurisdiction," A Corp., 812 F.3d at 60 (emphasis added), it is possible that NEER has additional contacts with Massachusetts that may alter the jurisdictional analysis.

Moreover, as also explained earlier, CDM has proffered evidence that Thevar exercises at least some control over NEER as its President and CEO. See Complaint (Dkt. No. 1) at ¶3. In addition, the fact that Thevar founded NEER and filed its formation documents indicates that Thevar at one point actively and directly participated in NEER's activities. See id. at ¶¶22-23. It is possible that discovery concerning Thevar's relationship with NEER will provide evidence, that if credited, would prove that Thevar does in fact exercise sufficient control over the company to warrant piercing of the corporate veil in this case.

Therefore, "the factual record is at least ambiguous or unclear" as to whether personal jurisdiction exists over NEER based on either NEER's contacts with Massachusetts or Thevar's contacts with Massachusetts as NEER's alter ego. In re Testosterone Replacement Therapy, 136 F. Supp. at 973. The court, therefore,

23

finds that CDM has made a colorable claim of personal jurisdiction as to NEER.

In addition, CDM has diligently pursued its claim for jurisdictional discovery, including its "obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." Swiss Am. Bank, 274 F.3d at 626. CDM has stated that it seeks discovery concerning "the extent of NEER's contacts with Massachusetts" and "Thevar's relationship with and control over NEER." Memo. Mot. Discovery (Dkt. No. 16) at 4. Discovery on these issues should permit the court to determine whether personal jurisdiction may exist under either of CDM's theories, which are both fact-intensive inquiries that rely on evidence primarily in the possession of NEER. Accordingly, allowing limited discovery on the issue of personal jurisdiction is appropriate. See Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 (1st Cir. 1973) (recognizing that "discovery concerning jurisdictional issues is appropriate where complex factual matters are in question and where a party has been diligent and is somewhat unfamiliar with his adversary").

IV. ORDER

In view of the foregoing, it is hereby ORDERED that:

1.    Defendants' Motion to Dismiss the Complaint for Lack of Personal Jurisdiction (Dkt. No. 8) is DENIED as to defendant Thevar.

24

2.   Defendant's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction (Dkt. No. 8) is DENIED without prejudice as to defendant NEER.

3.   Plaintiff's Motion for Limited Jurisdiction Discovery of defendant NEER (Dkt. No. 15) is ALLOWED. Plaintiffs shall, by December 30, 2022, complete that discovery.

4.   NEER shall, by January 20, 2023, file a renewed Motion to Dismiss addressing the evidence developed in discovery and plaintiff shall, by February 17, 2023, respond.

UNITED STATES DISTRICT JUDGE

25